| | |
|---|---|
| 1 | AARON J. MOSS (SBN 190625) |
| | aaron.moss@msk.com |
| 2 | JOSHUA M. GELLER (SBN 295412) |
| | josh.geller@msk.com |
| 3 | HANNAH G. SHEPHERD (SBN 347611) |
| | hannah.shepherd@msk.com |
| 4 | MITCHELL SILBERBERG & KNUPP LLP |
| | 2049 Century Park East, 18th Floor |
| 5 | Los Angeles, CA 90067-3120 |
| | Telephone: (310) 312-2000 |
| 6 | Facsimile: (310) 312-3100 |
| 7 | Attorneys for Plaintiffs |
| | Spyglass Media Group, LLC and |
| 8 | Paramount Pictures Corporation |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SPYGLASS MEDIA GROUP, LLC, a Delaware limited liability company; and PARAMOUNT PICTURES CORPORATION, a Delaware corporation, | CASE NO. 2:26-cv-1235 |
| | **COMPLAINT FOR DECLARATORY RELIEF** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | |
| THE ALTERIAN GHOST FACTORY, INC. d/b/a ALTERIAN, INC., a California corporation; and DOES 1–10, | |
| Defendants. | |

## INTRODUCTION

1. It is a familiar trope of horror films that characters ignore danger until it is too late. In cinema, delay heightens suspense. In the law, unreasonable delay is called laches, and in appropriate circumstances it can foreclose claims for relief. This is such a case. Defendant The Alterian Ghost Factory, Inc. d/b/a Alterian, Inc. ("Alterian") intentionally slept on its purported rights in the iconic "Ghostface" mask used throughout the *Scream* franchise for thirty years. Now—less than four weeks before *Scream 7* is set to be theatrically released worldwide—Alterian has threatened litigation in an effort to strong-arm Plaintiffs into paying it millions of dollars. Plaintiffs Spyglass Media Group, LLC ("Spyglass," the film's producer and co-financier) and Paramount Pictures Corporation ("Paramount," the film's distributor and co-financier) seek a judicial declaration that Alterian has no rights in the Ghostface mask and that Alterian's decades of inaction foreclose equitable relief.

2. *Scream* is one of the most successful horror films ever made. The original premiered in 1996 and revitalized a genre. It spawned six sequels, a television series, and nearly a billion dollars in worldwide box-office revenue. Even those with only a passing familiarity with horror films have seen the Ghostface mask worn by the franchise's killer—a mask that has been a Halloween mainstay for thirty years.

3. The origin of that mask has been publicly recounted for decades. While location scouting in Northern California, one of the film's producers encountered the mask in an abandoned house. The production team traced it to Easter Unlimited, Inc. d/b/a Fun World ("Fun World"), a costume company that had been manufacturing and selling it since the early 1990s. Fun World licensed the mask for use in *Scream* and has done so for each installment since. For thirty years, that arrangement was never the subject of any claim or lawsuit by Alterian.

4. But Alterian now wants to claim the mask was never Fun World's to license—that Alterian created the underlying design first, that decades ago Fun World copied it, and that every use of the mask in the *Scream* franchise infringes Alterian's copyright. Alterian has, by its own admission, known of Fun World's licensing for decades and done nothing. In a sworn declaration, Alterian's founder and CEO, **Tony Gardner, admitted: *"I have never taken action against [Fun World]. By the time I heard of them, I was too busy with original film projects to worry about an industry I'd left."*** (emphasis added).

5. Alterian continued to sit on its claimed rights until August 2024, when it sent demand letters to Fun World and to Plaintiffs asserting infringement and threatening litigation. Plaintiffs responded that they had licensed the mask from Fun World in good faith and that Alterian's claims were barred by the statute of limitations, laches, and other defenses.

6. Fun World, in turn, denies any copying. It maintains that it independently created the Ghostface mask in early 1991, and that any similarities between its mask and Alterian's design are the product of similar inspiration (e.g., the famous Edvard Munch painting *The Scream*).

7. The parties engaged in sporadic settlement discussions—punctuated by long periods of silence from Alterian—but no resolution was reached. Then, on January 29, 2026, Alterian abruptly escalated its demands, insisting that Plaintiffs pay millions of dollars by February 13—less than two weeks before *Scream 7* is

scheduled for release on February 25 internationally and February 27 in the United States—or Alterian would file suit in federal court.

8. The Supreme Court held in *Petrella v. Metro-Goldwyn-Mayer, Inc.* that "in extraordinary circumstances … the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, *at the very outset of the litigation*, curtailment of the relief equitably awardable." 572 U.S. 663, 685 (2014) (emphasis added).  This is such an extraordinary case.  Alterian has long known that Plaintiffs and their predecessors-in-interest were using the mask in a widely distributed film franchise, and it has known for years that *Scream 7* was in active development.  Equity rewards the vigilant, not those who knowingly sleep on their rights.

9. Alterian has never legally established that it owns the rights to the Ghostface mask, and it will not be able to prove it now in this litigation.  And seeking to disrupt the release of a completed motion picture mere weeks before its release—the seventh installment of a franchise that Alterian watched grow in silence for three decades—is an outrageous attempt to shake down Plaintiffs that goes far beyond what equity permits.

## JURISDICTION AND VENUE

10. This is a civil action for declaratory relief brought under 28 U.S.C. § 2201(a) with regard to an actual controversy arising under the Copyright Act, 17 U.S.C. § 101 *et seq.*  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

11. Alterian is subject to the personal jurisdiction of this Court and venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because Alterian resides in this District and because a substantial part of the events giving rise to the claims occurred in this District.

# THE PARTIES

12. Plaintiff Spyglass Media Group, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

13. Plaintiff Paramount Pictures Corporation is a Delaware corporation with its principal place of business in Los Angeles, California.

14. On information and belief, Defendant The Alterian Ghost Factory, Inc., d/b/a Alterian, Inc. is a California corporation with its principal place of business in Irwindale, California.

15. Defendants Does 1 through 10, inclusive, are individuals or entities whose true names and capacities are presently unknown to Plaintiffs. Plaintiffs are informed and believe, and on that basis allege, that each Doe Defendant participated in or is otherwise responsible for the conduct alleged herein. Plaintiffs will amend this Complaint to substitute the true names of the Doe Defendants when ascertained.

# FACTUAL BACKGROUND

## The *Scream* Franchise and the Ghostface Mask

16. The *Scream* motion picture franchise originated in the mid-1990s with the development of the original *Scream* film, which was released in 1996.

17. The screenplay for *Scream* was written by Kevin Williamson, who conceived the project as a self-aware horror film that both utilized and subverted classic horror tropes. The project was directed by Wes Craven, a veteran horror filmmaker known for works including *A Nightmare on Elm Street*. Dimension Films, then a division of Miramax, acquired the rights to the project.

18. During the development of the film, the production team sought a visual identity for the film's antagonist, whom the script described as wearing a "ghostly white mask." By chance, producer Marianne Maddalena discovered a Halloween costume ghost mask inside a home being scouted as a filming location in Northern California, which the team decided to use.

19. The mask was manufactured and distributed by Fun World, a costume company that had been manufacturing and selling it since the early 1990s. Fun World licensed the mask to the production for use in *Scream* and has done so for every *Scream* film since.

20. *Scream* was a commercial and critical success, generating more than $150 million at the worldwide box office. Its success launched a nearly-billion-dollar franchise, including five theatrical sequels between 1997 and 2023: *Scream 2*, *Scream 3*, *Scream 4*, *Scream* (2022), and *Scream VI*, and a television series that aired for three seasons between 2015 and 2019. As discussed further below, the seventh theatrical installment, *Scream 7*, is scheduled for release later this month.

21. Spyglass is the producer and co-financier and Paramount is the distributor and co-financier of the three most recent installments of the franchise, including the forthcoming *Scream 7*.

22. The Ghostface mask has also appeared prominently in the *Scary Movie* franchise, a series of horror-comedy parody films. Beginning with the original *Scary Movie* in 2000—which parodied *Scream*—the franchise has repeatedly featured the Ghostface mask pursuant to a license from Fun World, including in multiple sequels. Alterian took no legal action during the quarter century in which the *Scary Movie* franchise has openly exploited the mask.

### Alterian Publicly Claims That It Created the Ghostface Mask But Takes No Legal Action

23. From Plaintiffs' perspective, the origin of the Ghostface mask was straightforward—Fun World claimed to have created and owned the relevant rights, and licensed the mask for use in films to Plaintiffs and Plaintiffs' predecessors-in-interest. Plaintiffs and their predecessors relied on those rights and licenses in producing and distributing the films.

24. Alterian claims otherwise. Alterian is a California-based special effects and creature-design company that has worked on numerous film and

television projects.  Its founder and chief executive officer, Tony Gardner, and a former employee, designer Loren Gitthens, have publicly claimed that they designed a mask similar in appearance to the Ghostface mask in the early 1990s, which they called their "Wailer" mask.  They contend that Fun World copied the Wailer mask when designing the Ghostface mask design, speculating that Fun World must have seen Alterian's mask at an industry tradeshow.  Fun World denies that it copied the Wailer mask and maintains that it independently created the Ghostface design.

25. Notwithstanding these public claims, Alterian did not bring suit against Fun World, Plaintiffs, or any of their predecessors-in-interest during the decades in which the *Scream* franchise openly used and prominently featured the Ghostface mask.  During this same period, the mask was sold by Fun World at retail stores nationwide and widely displayed in films (including the *Scream* parody *Scary Movie*), television, and licensed *Scream* merchandise—all in plain view of Alterian.

**Alterian Participates in Federal Litigation Concerning the Mask's Origins, But Still Does Not Sue**

26. In 2020, the claimed origins of the mask became the subject of federal litigation—but not litigation brought by Alterian.  In *Easter Unlimited Inc. d/b/a Fun World v. Terry Rozier*, No. 18-CV-06637 (KAM) (E.D.N.Y.), Fun World sued a third party that Fun World contended had infringed the Ghostface mask.  The defendant in that action asserted that Fun World did not own the copyright.

27. In support of that defense, Alterian's founder and CEO, Tony Gardner, submitted a sworn declaration asserting that Alterian, not Fun World, created the original design.

28. Gardner also admitted that Alterian had never pursued any legal action against Fun World despite knowing of Fun World's licensing for years, stating: "I have never taken action against [Fun World].  By the time I heard of

them, I was too busy with original film projects to worry about an industry I'd left."

29. Gardner has made similar public statements for years acknowledging his awareness of the mask's use in *Scream* and expressing no objection. For example, in a 2023 *Fangoria* article, Gardner was quoted as stating that he was "genuinely flattered" to see the design used in the film and viewed it as "a great compliment" that the mask appeared "up there on the big screen."

30. The district court in *Rozier* found that Gardner knew of Fun World's licensing "potentially as early as 1996" and no later than 2003. The court held that Alterian would be barred by the statute of limitations from asserting ownership claims against Fun World based on its decades-long delay:

> Whether it has now been twenty-five years, eighteen years, or somewhere in between, since Mr. Gardner first knew or had reason to know [Fun World] was licensing what allegedly was Mr. Gardner's mask, far more than the relevant three-year statutory period has elapsed. Mr. Gardner is time-barred from asserting a claim under the Copyright Act against [Fun World].

*Easter Unlimited, Inc. v. Rozier*, No. 18-CV-06637 (KAM), 2021 WL 4409729, at *8 (E.D.N.Y. Sept. 27, 2021).

31. Despite participating as a third party in the *Rozier* litigation—and despite the court's express observations about Alterian's delay—Alterian still did not bring suit against Fun World or Plaintiffs.

32. In November 2023—three decades after the alleged early-1990s creation and long after the release of *Scream*, its sequels, and a television series—Alterian obtained a copyright registration for the Wailer mask, U.S. Copyright Registration No. VA 2-370-271 (the "Asserted Copyright"). Yet still, it did not bring suit.

**Alterian's Long-Dormant Claim Surfaces;**

**Fun World Denies Copying and No Resolution is Reached**

33.     In late July 2024, more than three decades after Alterian claims Fun World copied its mask, Alterian belatedly asserted its purported rights by sending demand letters threatening litigation.  On or about July 29, 2024, Alterian sent a letter to Fun World asserting that Fun World had infringed Alterian's copyright in the Wailer mask.  Shortly thereafter, on or about August 7, 2024, Alterian sent similar demand letters to Plaintiffs.

34.     On August 16, 2024, Fun World responded to Alterian's demand.  Fun World adamantly denied any infringement.  Fun World explained that it had independently created its Ghostface mask in early 1991 without any copying of Alterian's "Wailer" mask.

35.     Fun World has represented that it engaged Hong Kong-based sculptor Fok Lee as a work-for-hire artist to collaborate in creating a new line of Halloween masks.  According to Fun World, Mr. Lee designed and created a number of different mask prototypes for Fun World at his studio in Hong Kong, principally using modeling clay.  In early to mid-1991, Fun World's principal Alan Geller traveled to Hong Kong to review those designs and approved the Ghostface mask for manufacture.

36.     Fun World has consistently denied any copying and has maintained that any similarities between the masks are attributable to common inspiration, including the well-known Edvard Munch painting *The Scream*.

37.     In addition, Fun World explained that Alterian's claims were barred by, among other things, the statute of limitations, laches, waiver, and abandonment.  Fun World noted that the federal court in *Rozier* had already held that Alterian was time-barred from asserting copyright claims against Fun World based on Gardner's own admissions of delay.  Alterian's delay has also caused substantial evidentiary prejudice—on information and belief, Fun World's

principal witness regarding the mask's creation, sculptor Fok Lee, has since passed away and so is unavailable to testify.

38.  On August 20, 2024, Plaintiffs' counsel responded to Alterian's demand.  Plaintiffs explained that they had licensed the mask from Fun World in good faith, relying on Fun World's representations that it owned the copyright.  Plaintiffs contended that Alterian's claims were barred by the statute of limitations, laches, and other defenses, and that Alterian's dispute—if any—was properly addressed to Fun World.

39.  On August 30, 2024, Alterian responded to Fun World, reiterating its claims and demanding compliance by September 9, 2024.  Alterian's counsel stated that if Fun World did not comply by that date, "Alterian will continue to vigorously pursue this matter, which may result in filing a complaint in federal district court against Fun World and Fun World licensees."

40.  But Alterian still did not file suit.  Instead, the parties engaged in sporadic settlement discussions over the following months, punctuated by long periods of silence from Alterian.  No resolution was reached.

## Alterian Abruptly Escalates Its Demands

41.  *Scream 7* is the latest installment in the *Scream* franchise and a significant event for the series.  It reunites Neve Campbell, who starred in the original 1996 film, with other beloved cast members for the first time in years.

42.  Development on *Scream 7* began in 2022.  The film is scheduled to be theatrically released on February 25, 2026 internationally and February 27, 2026 in the United States.  Plaintiffs have invested over $100 million dollars in the production, marketing, and distribution of *Scream 7* alone, and hundreds of millions of dollars across the franchise.

43.  More than 17 months after its original demand letter, Alterian abruptly escalated.  On January 29, 2026, Alterian, through counsel, sent Plaintiffs a demand letter threatening imminent litigation and enclosing a draft complaint,

which Alterian threatened to file unless it received written confirmation by February 13, 2026 that Plaintiffs would meet its monetary demands. Alterian's strategic timing—waiting until the eve of *Scream 7*'s theatrical release to deliver its ultimatum—underscores the inequity of the claims it now threatens. Alterian seeks to use the prospect of disrupting a completed motion picture release to coerce a settlement far exceeding anything a court would award after trial.

44. To the extent Alterian seeks equitable remedies, such relief would be legally unavailable. Even setting aside Alterian's decades-long delay, Alterian cannot satisfy the traditional requirements for injunctive relief under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Alterian has suffered no irreparable injury, has adequate remedies at law (as demonstrated by its own demand for a cash payment), the balance of hardships overwhelmingly favors Plaintiffs—who have invested hundreds of millions of dollars in producing and releasing their films—and the public interest weighs strongly against restricting the release of expressive works.

45. The Ninth Circuit has barred injunctive relief in strikingly similar circumstances. In *Danjaq LLC v. Sony Corp.*, the plaintiff delayed 36 years in asserting ownership claims to the James Bond franchise while watching the defendant invest more than a billion dollars in the property. 263 F.3d 942, 954–59 (9th Cir. 2001). The court held that laches foreclosed equitable relief. Alterian's delay is comparable, and its requested relief is equally foreclosed.

### FIRST CLAIM FOR RELIEF
### DECLARATORY RELIEF

46. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 45 as though fully set forth herein.

47. An actual, substantial, and justiciable controversy exists between Plaintiffs and Alterian regarding Alterian's assertions that Plaintiffs' exploitation of the Ghostface mask infringes the Asserted Copyright and that Alterian is

Mitchell Silberberg & Knupp LLP
21368680.13
11
COMPLAINT FOR DECLARATORY RELIEF

entitled to injunctive and other equitable relief restraining Plaintiffs' distribution and exploitation of *Scream 7* and the *Scream* and *Scary Movie* franchises.

48. By its January 29, 2026 demand letter and draft complaint, Alterian has threatened imminent litigation, asserted claims for direct, contributory, and vicarious copyright infringement, and stated that it would seek injunctive and other relief affecting Plaintiffs' continued exploitation and distribution of *Scream 7*, *Scary Movie 6*, and other films in the franchises. These threats have created a concrete and immediate controversy and a reasonable apprehension of suit that materially interferes with Plaintiffs' ongoing and planned distribution activities.

49. Alterian has asserted that Plaintiffs' exploitation of the Ghostface mask infringes the Asserted Copyright. Plaintiffs contend that Alterian will be unable to establish its claims of copyright infringement, including because the Ghostface mask was independently created by Fun World and properly licensed to Plaintiffs, and any challenge to Fun World's ownership (or its licenses to Plaintiffs) is barred by, *inter alia*, the statute of limitations and the doctrines of waiver, abandonment, and estoppel.

50. Even if Alterian could establish infringement—which it cannot—Plaintiffs contend that Alterian is barred from obtaining any equitable relief, including because of Alterian's unreasonable and prejudicial delay and the equitable defense of laches, among other reasons. Plaintiffs also contend that Alterian cannot establish the essential elements of a claim for injunctive relief because: (1) Alterian has not suffered an irreparable injury; (2) Alterian has remedies at law, including a claim for damages against Fun World, that are adequate to compensate for any purported injury; (3) the balance of hardships favors Plaintiffs; and (4) the public interest would be disserved by an injunction.

51. A judicial declaration of the parties' respective rights is necessary and appropriate to clarify and settle their legal relations and to resolve the uncertainty and controversy created by Alterian's January 29, 2026 demand letter and

threatened lawsuit.  Declaratory relief is therefore equitable and proper under the circumstances.

52.  Plaintiffs therefore seek a declaration that (1) Plaintiffs do not infringe the Asserted Copyright through their depiction of the Ghostface mask; (2) Alterian is barred by its unreasonable and prejudicial delay, including under the doctrines of laches, estoppel, waiver, and related equitable principles, from seeking or obtaining injunctive or other equitable relief against Plaintiffs in connection with the Asserted Copyright.  The declaratory relief sought will resolve a concrete and immediate dispute between the parties and clarify the parties' respective rights and obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Alterian as follows:

1. A declaration that Plaintiffs are not liable for copyright infringement in connection with the Asserted Copyright;

2. A declaration that Alterian is barred from seeking or obtaining injunctive relief or other equitable relief against Plaintiffs in connection with alleged infringement of the Asserted Copyright;

3. An award of Plaintiffs' reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

4. Such other and further relief as the Court may deem just and proper.

DATED: February 6, 2026                MITCHELL SILBERBERG & KNUPP LLP

By: _____
Aaron J. Moss
Joshua M. Geller
Hannah G. Shepherd
Attorneys for Plaintiffs Spyglass Media Group, LLC and Paramount Pictures Corporation

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: February 6, 2026         MITCHELL SILBERBERG & KNUPP LLP

By: _____
Aaron J. Moss
Joshua M. Geller
Hannah G. Shepherd
Attorneys for Plaintiffs Spyglass Media Group, LLC and Paramount Pictures Corporation